In re William E. SPRINGHART,
Debtor.

Stephen J. Clark, Plaintiff

v.

William E. Springhart, Defendant.

Bankruptcy No. 10–30906.
Adversary No. 10–3263.

United States Bankruptcy Court,
S.D. Ohio,
Western Division,
at Dayton.

April 12, 2011.

Craig Thomas Matthews, Centerville, OH, for Plaintiff.

Gregory Turner, Englewood, OH, for Defendant.

## DECISION DENYING PLAINTIFF STEPHEN J. CLARK'S MOTION FOR SUMMARY JUDGMENT

LAWRENCE S. WALTER, Bankruptcy Judge.

This matter is before the court on the *Plaintiff's Motion for Summary Judgment* [Adv. Doc. 17]; *Defendant's Response to Motion for Summary Judgment* [Adv. Doc. 18]; and *Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment* [Adv. Doc. 19]. The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334, and the standing General Order of Reference in this District. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

On summary judgment, Plaintiff Stephen J. Clark ("Clark") asserts that a South Carolina state court judgment should be afforded preclusive effect as to the elements of his claims to determine a debt nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). Clark obtained the state court judgment by default. However, because the default judgment arose from a counterclaim in a lawsuit originally filed by Debtor–Defendant William E. Springhart ("Springhart"), Clark argues that Springhart had a full and fair opportunity to participate in the lawsuit and litigate the issues. Alternatively, if the default judgment cannot be given preclusive effect, Clark argues that preclusive effect should be afforded to the more lengthy and detailed state court order awarding damages that was entered following a hearing.

After reviewing the doctrine of collateral estoppel or issue preclusion, as adopted in South Carolina, the court concludes that the default judgment and order awarding damages cannot be afforded preclusive effect in this bankruptcy dischargeability proceeding. First, South Carolina does not allow default judgments to have preclusive effect under the collateral estoppel doctrine because no issues were actually litigated. Second, even if certain default judgments could have preclusive effect as to specific issues that were determined on the merits, the default judgment contains no indication of any specific facts or issues that were so determined.

The same is true of the subsequent damages order entered by the South Carolina court. Like the default judgment, the damages order contains no clear determination of the merits of Clark's claims against Springhart nor is it appropriate to infer a determination of the merits solely from the state court's consideration of damages evidence at a hearing following the entry of default. Consequently, this matter must proceed to trial on all elements of the § 523 dischargeability claims.

### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are relevant to determining the issues on summary judgment and are not in dispute. The story begins before Springhart's bankruptcy filing when, in May of 2007, he filed a complaint against two doctors, including Clark, in the Common Pleas Court for the Fourteenth Judicial Circuit of South Carolina ("South Carolina court"). In August of 2007, Clark filed an answer and counterclaim asserting several state law causes of action against Springhart including: 1) Breach of Fiduciary Duty; 2) Negligence; 3) Fraud and Misrepresentation; 4) Negligent Misrepresentation / Constructive Fraud; 5) Constructive Trust; 6) Unfair Trade Practices; and 7) Unjust Enrichment / Restitution [Adv. Docs. 1 and 3–6, collectively "Compl.," Ex. B].

Springhart did not answer Clark's counterclaim and, in May of 2008, the South Carolina court entered default judgment against Springhart [Adv. Doc. 17, Ex. A]. In its "Order Entering Default," the South Carolina court made the following determinations:

It appears from the records on file, the Affidavit ... and the Motion and exhibits filed by Defendants that Plaintiffs Island Palms Marketing Group, LLC ("Island Palms") and William E. Springhart have failed to answer, plead, or otherwise defend this action though being duly served by the Defendants Answer and Counterclaim on August 29, 2007, which service was made upon Plaintiffs' counsel of record. As an additional ground for entering default against Plaintiffs William E. Springhart and Island Palms, it appears to the Court that Plaintiff William E. Springhart, the sole member of Island Palms, failed to appear for his deposition, though the deposition was duly noticed. Therefore, in accordance with South Carolina Rules of Civil Procedure 55(a) and 37(d), it is declared that Plaintiffs Island Palms and William E. Springhart are in default and the default of said Plaintiffs is hereby entered.

[Id.]. The Order Entering Default includes no other determinations or findings [Id.].

Later, in May of 2009, the South Carolina court held a hearing to determine damages [Compl., Ex. A, p. 1]. While Springhart was given notice of the damages hearing, he did not attend [Id.]. Clark attended the hearing and provided testimony [Id., p. 2]. Thereafter, the South Carolina Court entered its "Order Awarding Damages to John Keith Bidwell and Stephen J. Clark" ("Damages Order") in which it found Springhart and Island Palms Marketing Group, LLC jointly liable to Clark for $3,369,782.63 in damages [Id., p. 11].

While a major portion of the lengthy Damages Order is dedicated to calculating losses on real estate investments suffered by Clark and the other doctor, the references to the underlying claims against Springhart are few [Id.]. The Damages Order includes a statement that the damages are a direct consequence of Springhart's "actions and omissions" as set forth more fully in Clark's answer and counterclaim [Id., p. 10]. However, the South Carolina court does not specify what those "actions and omissions" are nor does the court indicate that it received and considered evidence of those acts and omissions as part of the damages hearing [Id.]. The South Carolina court further notes that Springhart's liability for all causes of action in the counterclaim was established by the entry of default and that those causes of action include "willful violation of the SCUTPA [the South Carolina Unfair Trade Practices Act] and fraud" [Id.]. However, again, the court makes no mention of those claims being actually litigated, or that any evidence was submitted or considered in support of those claims [Id.].

Springhart filed his Chapter 7 bankruptcy petition on February 22, 2010. On July 21, 2010, Clark filed his adversary complaint requesting that the state court judgment debt owed by Springhart be determined nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6) [Adv. Doc. 1].

### LEGAL ANALYSIS

### A. Standard for Summary Judgment

The appropriate standard to address Clark's motion for summary judgment is contained in Fed.R.Civ.P. 56 and incorporated in bankruptcy adversary proceedings by reference in Fed. R. Bankr.P. 7056. Rule 56(a) provides that summary judgment is to be granted by the court "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

In order to prevail, the moving party, if bearing the burden of persuasion at trial, must establish all elements of its claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thereafter, the opposing party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). All inferences drawn from the underlying facts must be viewed in a light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 586–88, 106 S.Ct. 1348.

The procedures for asserting facts or demonstrating a dispute of facts are set forth in Rule 56(c), a provision that was recently amended effective December 1, 2010:

(1) *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence.

Fed.R.Civ.P. 56(c). While this provision is intended to elucidate the proper procedures for supporting facts on summary judgment, the amendments to Rule 56 have not changed the standard itself nor are the amendments intended to affect the decisional law construing and applying the standard. *O'Neil v. Goode (In re Goode),* 2011 WL 576590, at *2 n. 2 (Bankr. E.D.Tenn. Feb.8, 2011) (citing the Notes of Advisory Committee on 2010 amendments).

**B. Preclusive Effect of Order Entering Default and Damages Order**

■ On summary judgment, Clark argues that the state court judgment he obtained against Springhart, admittedly by default, should have preclusive effect in this adversary proceeding. Under 28 U.S.C. § 1738, federal courts are directed to give the same "full faith and credit" to a state court judgment as would be given that judgment under the law of the state in which it is rendered. *Bay Area Factors v. Calvert (In re Calvert),* 105 F.3d 315, 317 (6th Cir.1997); *Sill v. Sweeney (In re Sweeney),* 276 B.R. 186, 189 (6th Cir. BAP 2002) (citing *Markowitz v. Campbell (In re Markowitz),* 190 F.3d 455, 461 (6th Cir. 1999)). Consequently, in order for a South Carolina default judgment to have preclusive effect in a bankruptcy adversary proceeding, it must be entitled to such effect under South Carolina's preclusionary principles.

■ South Carolina recognizes the dual preclusionary doctrines of res judicata, also known as claim preclusion, and collateral estoppel, also known as issue preclusion. The defining characteristics of these doctrines are described as follows:

The doctrines of *res judicata* and collateral estoppel are ... two different con-

cepts. A final judgment on the merits in a prior action will conclude the parties and their privies under the doctrine of *res judicata* in a second action based on the same claim as to issues actually litigated and as to issues which might have been litigated in the first action. Under the doctrine of collateral estoppel, on the other hand, the second action is based upon a different claim and the judgment in the first action precludes relitigation of only those issues "actually and necessarily litigated and determined in the first suit."

*Liberty Mut. Ins. Co. v. Employers Ins. of Wausau,* 284 S.C. 234, 325 S.E.2d 566, 568 (1985) (citing *Beall v. Doe,* 281 S.C. 363, 315 S.E.2d 186, 189–90 n.1 (S.C.Ct.App. 1984)). "Expressed differently, '*res judicata*' bars relitigation of the same cause of action while 'collateral estoppel' bars relitigation of the same facts or issues necessarily determined in the former proceeding." *Id.*

■ Of these doctrines, it is collateral estoppel that applies to determine whether specific facts or issues determined in a prior state court judgment bar relitigation of those same facts or issues in a separate bankruptcy dischargeability proceeding. *See Grogan v. Garner,* 498 U.S. 279, 284 n. 1, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (noting that it is collateral estoppel principles that apply in discharge exception proceedings pursuant to § 523(a)); *Sartin v. Macik,* 535 F.3d 284, 287 (4th Cir.2008); *Samson v. Ward (In re Ward),* 194 B.R. 53, 56 (Bankr.D.S.C.1995). The Supreme Court of South Carolina adopts the general rule of collateral estoppel set forth in the Restatement (Second) of Judgments § 27 (1982) which states:

When an issue of fact or law is *actually litigated* and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent ac-

tion between the parties, whether on the same or different claim.

*State v. Bacote,* 331 S.C. 328, 503 S.E.2d 161, 162 (1998) (emphasis added). *See also South Carolina Prop. and Cas. Ins. Guar. Ass'n v. Wal–Mart Stores, Inc.,* 304 S.C. 210, 403 S.E.2d 625, 627 (1991) (adopting the general preclusionary principles set forth in the Restatement (Second) of Judgments §§ 27, 28 and 29).

■ In *Bacote,* the Supreme Court of South Carolina considered the applicability of the collateral estoppel doctrine to a default judgment. The court concluded that a judgment obtained by default does not collaterally estop the litigation of any issues in a subsequent lawsuit "because an essential element of that doctrine requires that the claim sought to be precluded actually have been litigated in the earlier litigation." *Bacote,* 503 S.E.2d at 163. The court's determination in *Bacote* comports with the Restatement (Second) of Judgments § 27, comment (e) providing some of the policy reasons why default judgments and other judgments that do not involve the actual litigation of issues are not afforded collateral estoppel effect:

A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action. There are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action. The action may involve so small an amount that litigation of the issue may cost more than the value of the lawsuit. Or the forum may be an inconvenient one in which to produce the necessary evidence or in which to litigate at all. The interests of conserving judicial resources, of maintaining consistency, and of avoiding oppression or harassment of the adverse party are less compelling when the issue on which preclusion is

sought has not actually been litigated before. And if preclusive effect were given to issues not litigated, the result might serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation. * * *

In the case of a judgment entered by ... default, none of the issues is actually litigated. Therefore, the rule of this Section does not apply with respect to any issue in a subsequent action.

Restatement (Second) of Judgments § 27 cmt. (e) (1982). Thus, unless a relevant fact or issue was actually litigated and determined by the South Carolina court, Clark's judgment has no preclusive effect as to any of the elements he must prove pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) or (a)(6).[1]

■ In the case at hand, the South Carolina court's Order Entering Default is short in detail and includes no factual or legal findings with respect to Clark's underlying claims [Adv. Doc. 17, Ex. A]. The order notes only that Springhart failed to answer the counterclaim, failed to appear for a deposition and failed to defend his action [Id.]. As such, the South Carolina court declared that Springhart was in de-

fault and entered judgment against him and a related party [Id.]. Because no underlying facts or legal issues were actually litigated and determined by the court, the Order Entering Default is not the type of order afforded collateral estoppel effect under South Carolina law.

■ Nonetheless, Clark argues that this situation is unusual because Springhart was the plaintiff and initiated the South Carolina lawsuit. The default judgment was entered against Springhart with respect to a counterclaim. According to Clark's argument, this unusual situation demonstrates that Springhart was an active participant in the lawsuit and had the "opportunity to litigate" the issues raised in the counterclaim. However, having the opportunity to litigate is not the same as an issue being actually litigated for collateral estoppel purposes. *Sartin*, 535 F.3d at 290. While the two requirements sound the same, the "actual litigation" requirement concerns the *issues* at stake while "opportunity to litigate," an additional requirement most often discussed when using collateral estoppel against someone who was not a party to the original lawsuit, concerns *the parties affected. Id.* Because Springhart was an active participant in the original lawsuit, the "opportunity to

---

1. In the adversary complaint, Clark requests that Springhart's debt be determined nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) or (a)(6). These provisions of the Bankruptcy Code provide:

 (a) A discharge ... does not discharge an individual debtor from any debt—
 
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
 
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
 * * * *
 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]

 * * *
 (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]
 
 11 U.S.C. § 523(a). For the state court judgment to have collateral estoppel effect, Clark must demonstrate that specific facts or issues actually litigated and determined by the state court are identical to facts and/or issues necessary to meet one or more of the elements of these § 523 nondischargeability claims. *See Grogan*, 498 U.S. at 284, 111 S.Ct. 654 (noting that a bankruptcy court can properly give collateral estoppel effect to those elements of a state law claim that are identical to the elements required for nondischargeability of a debt if those elements were actually litigated and determined in the prior action).

litigate" requirement is obviously met and a nonissue in this case. However, Clark must still show that the relevant issues were "actually litigated," a requirement which he has not demonstrated with respect to the Order Entering Default.[2]

 Alternatively, Clark argues that while the judgment was entered by default, he subsequently presented testimony at a damages hearing leading to the more lengthy Damages Order entered by the South Carolina court [Compl., Ex. A]. If the Order Entering Default cannot be given collateral estoppel effect, Clark argues that the court should afford preclusive effect to the findings and award of damages in the Damages Order.

In *Sill v. Sweeney (In re Sweeney)*, the Bankruptcy Appellate Panel for the Sixth Circuit ("BAP") confronted a similar argument with respect to the preclusive effect of an Ohio default judgment and damages order in a subsequent bankruptcy dischargeability proceeding. 276 B.R. at 188. In that case, the state court had taken some factual testimony from the plaintiffs prior to rendering a default judgment against the debtor on a fraud count along with an award of damages. *Id.* at 188–89. The order did not include any findings of fact or conclusions of law with respect to the fraud count but noted that "Based upon the evidence, the court is satisfied that judgment should be rendered in favor of the plaintiffs . . ." *Id.* at 189.

The issue of whether the judgment should be afforded preclusive effect was appealed to the BAP which focused on collateral estoppel requirements including "actual litigation." The BAP held that for fraud to be considered "actually litigated" in conjunction with the entry of default judgment, there must be a way of knowing in subsequent nondischargeability litigation that the state court decided the merits of the underlying fraud claim. *Id.* at 194. The best evidence that a court determined the merits of the claim would be findings of fact and conclusions of law by the court entering the default judgment. *Id.* Applying that logic, the BAP noted that the only finding by the Ohio court was a vague statement that it was "satisfied" that judgment should be rendered in favor of the plaintiffs. *Id.* That finding was insufficient to indicate that the Ohio court had actually determined the merits of the plaintiffs' fraud claim. *Id.* (noting that a fair reading of that language could be that the court was satisfied in the amount of damages awarded rather than any specific finding that the debtor was guilty of fraud or any elements of fraud). Without more specificity or affirmative findings regarding the underlying claim, the BAP concluded that the Ohio judgment was "not 'sufficiently detailed to support the application of the

---

2. In *Sartin*, a case involving similar issues, the Fourth Circuit noted that there may be good policy reasons to stray from the "actual litigation" requirement under certain circumstances such as when a default judgment results from the deliberate abuse of the judicial process. 535 F.3d at 291. However, the Fourth Circuit was reluctant to apply such a nontraditional interpretation of the collateral estoppel doctrine absent some indication that the courts of the state whose law was being applied would adopt such an approach. *Id.* (declining to stray from the traditional requirement of "actual litigation" when interpreting North Carolina's doctrine of collateral

estoppel because there was no indication that the North Carolina courts would adopt such an approach). In the case at hand, there is some indication that the Order Entering Default resulted in part from Springhart's failure to attend a deposition. However, Clark has not demonstrated that the South Carolina courts would stray from the traditional collateral estoppel requirement of "actual litigation" under these circumstances nor has this court found support for such a departure. Consequently, the Order Entering Default cannot be given collateral estoppel effect on this basis.

collateral estoppel doctrine.' " *Id.* (further citations omitted).

The BAP further considered whether it could infer the state court's determination of the merits from the fact that the Ohio court awarded punitive damages in conjunction with default judgment. *Id.* Declining to give collateral estoppel effect to the judgment based on the state court's award of damages, the BAP noted the following:

> We think this a better result than one which would allow preclusion from reasoning backwards from the damage awards to what "must" have been found in order to justify them. For example, one could reason that the court's award of punitive damages on the fraud count must mean that it actually decided that a fraud was committed. But that same reasoning would find preclusion to be the result of *every* default judgment, and so in every automobile accident case we would reason backwards from an award of damages to the conclusion that the court *must* have decided that the defendant was negligent. Even if a review of the record showed that evidence had been presented from which the court *could* have found negligence, there would be no assurance that it did, for we can never know whether the court awarded damages based on the evidence presented or merely on the defendant's default, as it was entitled to. It would always be free to ignore the evidence, or find it insufficient, and rely on the default instead. Only findings, or something like them, will show whether the court actually decided the question, and we think that the Plaintiffs have not carried their burden of showing such findings in this case.

*Id.* at 194–95. In other words, because a default judgment obviates the plaintiff's burden of proving the elements of the claim, one cannot assume that the merits were determined from either the default judgment itself or an award of damages in conjunction with a default judgment.

It is true that the BAP's interpretation of collateral estoppel is based on Ohio law. However, the "actual litigation" requirement of the doctrine as adopted in Ohio is similar to that adopted in South Carolina. *Id.* at 189 (noting that the elements required for application of the collateral estoppel doctrine under Ohio law include that the issue has been "actually and directly litigated"). Furthermore, the parties have given this court no indication that South Carolina would take a different approach than that described in *Sweeney.*

Like the Ohio judgment order in *Sweeney,* the South Carolina Damages Order, while lengthy, contains only a few vague references to Clark's underlying claims against Springhart [Compl., Ex. A]. The South Carolina court states that the damages suffered by Clark were a direct consequence of Springhart's "actions and omissions" as set forth more fully in Clark's answer and counterclaim [*Id.,* p. 10]. However, the court does not specify what those "actions and omissions" are nor does the court mention receiving and considering actual evidence of those acts and omissions as part of the damages hearing [*Id.*]. Consequently, there is no way to know whether the South Carolina court actually considered evidence and made any determination as to Springhart's alleged misconduct solely from this statement.

The Damages Order further states that Springhart's liability for all causes of action in Clark's counterclaim was established by the entry of default and that those causes of action include "willful violation of the SCUTPA [the South Carolina Unfair Trade Practices Act] and fraud" [*Id.*]. Again, the South Carolina court makes no mention of those claims being determined through litigation and the sub-

mission of evidence. Rather, this appears to be a reference to Clark's claims against Springhart that were granted without direct determination of the issues via the Order Entering Default. In the end, none of these vague statements by the South Carolina court constitutes the type of findings of fact or conclusions of law that are sufficiently detailed to support the application of collateral estoppel in subsequent litigation.

 The remainder of the Damages Order involves the calculation of damages or, more specifically, real estate investment losses suffered by Clark and the other doctor involved in the litigation. While it is possible that Clark presented evidence of fraud or other misconduct that might be relevant in this nondischargeability proceeding, the South Carolina court's consideration of that evidence is not indicated in the Damages Order. Thus, it is just as possible that the only evidence considered by the South Carolina court related to calculating financial losses. Like the BAP, this court is unwilling to infer any consideration of the merits of Clark's claims against Springhart solely from an award of damages following the entry of default. Consequently, the Damages Order does not have collateral effect in these proceedings.[3]

### CONCLUSION

The South Carolina court's Order Entering Default and Damages Order are not entitled to collateral estoppel effect as to

the elements of Clark's claims pursuant to 11 U.S.C. § 523(a). For these reasons, the motion for summary judgment [Adv. Doc. 17] filed by Plaintiff Stephen J. Clark is **denied** and the issue of the dischargeability of Debtor William E. Springhart's debt will proceed to trial.

**SO ORDERED.**

---

3. This conclusion does not mean that the South Carolina court's Order Entering Default and Damages Order will have no impact in this adversary proceeding. Pursuant to the doctrine of res judicata or claim preclusion, a final South Carolina judgment, even one entered by default, may conclusively establish the validity and amount of the underlying debt leaving the only issue for trial the dischargeability of that debt. *See Heckert v. Dotson (In re Heckert)*, 272 F.3d 253, 257 (4th

Cir.2001) (noting that when a prior state court judgment calculates a debt and that debt is at issue in a dischargeability proceeding, the bankruptcy court cannot issue its own judgment on the debt to replace the state court judgment and, instead, is only authorized to determine whether or not that state judgment is dischargeable). However, this issue was not raised on summary judgment and is not determined by the court at this time.