**THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Dag Pavic and Stela Susac-Pavic, Plaintiffs,

v.

Carolina Cottage Homes, LLC d/b/a Saussy Burbank; SB Holding, LLC d/b/a Saussy Burbank; Saussy Burbank GC, LLC; American Residential Services, LLC; Builders FirstSource-Southeast Group, LLC; Hurley Services, LLC; Simons Contractors, LLC and Cohen's Drywall Company, Inc., Defendants,

of which Hurley Services, LLC is the Respondent.

AND

Builders FirstSource-Southeast Group, LLC, Appellant,

v.

MW Manufacturers, Inc., Third Party Defendant.

Appellate Case No. 2021-000290

———————————

Appeal From Charleston County
Jennifer B. McCoy, Circuit Court Judge

———————————

Unpublished Opinion No. 2025-UP-082
Heard December 5, 2023 – Filed March 12, 2025
Withdrawn, Substituted, and Refiled June 25, 2025

## AFFIRMED

Stephen P. Hughes and William Hewitt Cox, III, both of Howell Gibson & Hughes, PA, of Beaufort, for Appellant.

W. McElhaney White and Todd Russell Flippin, both of Holcombe Bomar, PA, of Spartanburg, for Respondent.

**PER CURIAM:** This litigation arises from alleged construction defects in the Mount Pleasant home Dag Pavic and Stela Susac-Pavic (Plaintiffs) bought from general contractor Saussy Burbank. Plaintiffs amended their complaint to include a claim against Builders FirstSource-Southeast Group, LLC (BFS) and others for "defective/improper installation of windows and related flashing" during the home's original construction. BFS brought crossclaims against Hurley Services, LLC (Hurley), the labor-only subcontractor BFS hired pursuant to a master subcontract agreement (the Agreement) to install the doors and windows in the home. BFS's claims for breach of contract, breach of express and implied warranties, negligence, contractual indemnity, and equitable indemnity were premised upon Hurley's alleged negligence in the installation of the windows BFS provided. BFS also filed third-party claims against the window manufacturer.[1]

Based on Plaintiffs' stipulation that they were not alleging any window manufacturing defect, BFS later executed a separate stipulation dismissing the window manufacturer without prejudice from the Pavic litigation. However, BFS's claims against Hurley remained. Hurley moved for partial summary judgment as to some of BFS's claims. After a hearing, the circuit court granted Hurley's motion.[2] The circuit court denied BFS's subsequent Rule 59(e), SCRCP, motion.

---

[1] The windows BFS provided for installation in this single family home were the subject of a class action against the window manufacturer. *See Gulbankian v. MW Mfrs., Inc.*, No. 10-10392-RWZ, 2014 WL 7384075 (D. Mass. 2014). This class action litigation was ultimately settled.

[2] BFS conceded that its warranty, breach of contract, and negligence claims were subject to dismissal as disguised indemnity claims pursuant to *Stoneledge at Lake*

BFS appealed, arguing the circuit court erred in: (1) misapplying section 32-2-10 of the South Carolina Code (2007) to the Agreement; (2) mischaracterizing the relief sought by BFS and thus mistakenly applying the clear and unequivocal standard articulated by *Concord & Cumberland Horizontal Property Regime v. Concord & Cumberland, LLC*, 424 S.C. 639, 819 S.E.2d 166 (Ct. App. 2018) to the relevant contract language; (3) finding the Agreement was an adhesion contract; (4) failing to properly address severability; (5) applying collateral estoppel to bar BFS's indemnity claims; and (6) failing to find a genuine issue of material fact precluded partial summary judgment.

We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1.  The circuit court did not err in finding "the indemnity and duty to defend provisions of the [Agreement] violate South Carolina public policy and § 32-2-10" because through these provisions BFS sought "indemnity for its sole negligence in selecting and selling products which are defective or are the subject of class-action litigation."  *See* S.C. Code Ann. § 32-2-10 ("Notwithstanding any other provision of law, a promise or agreement in connection with the design, planning, construction, alteration, repair or maintenance of a building . . . purporting to indemnify the promisee, its independent contractors, agents, employees, or indemnitees against liability for damages arising out of bodily injury or property damage proximately caused by or resulting from the sole negligence of the promisee . . . is against public policy and unenforceable."); *Builders FirstSource-Se. Grp., LLC v. Palmetto Trim & Renovation*, Op. No. 6099 (S.C. Ct. App. filed Feb. 12, 2025) (Howard Adv. Sh. No. 7 at 7, 31-32) (affirming circuit court's findings that contractual indemnity language in two versions of BFS's master subcontractor Agreement are unenforceable under § 32-2-10).  While the statute allowed BFS and Hurley to agree Hurley would indemnify BFS for damages caused by Hurley or Hurley's agents, the terms of the Agreement here seek to obligate Hurley not only to warrant the design and suitability of the defective materials BFS provided for installation but also to indemnify and defend BFS from property damage or personal injury resulting from the moisture intrusion issues related to the faulty windows.[3]  Such contract terms violate § 32-2-10.  *See*

_____

*Keowee Owners' Ass'n, Inc. v. Builders FirstSource-Se. Grp.*, 413 S.C. 630, 776 S.E.2d 434 (Ct. App. 2015).

[3] Despite BFS's arguments to the contrary, the language in SECTION 3 of the Agreement stating "Subcontractor guarantees the Work against defects in design, workmanship, and materials" only makes sense if the words "design,

*D.R. Horton, Inc. v. Builders FirstSource-Se. Grp., LLC*, 422 S.C. 144, 152, 810 S.E.2d 41, 46 (Ct. App. 2018) ("The indemnification agreement in this case purports to require BFS to indemnify D.R. Horton for its own negligence in violation of section 32-2-10.  Because the agreement violates the statute, we cannot require BFS to pay for damages caused by D.R. Horton.").

2.  The circuit court properly applied the clear and unequivocal standard of *Concord & Cumberland* to the relevant language of the Agreement.  *See* 424 S.C. at 646, 819 S.E.2d at 170 (rejecting general contractor's argument that general rules of contract should apply as opposed to the "clear and unequivocal" standard because the heightened standard applied whether the general contractor "sought indemnification for its sole or concurrent negligence").  Here, the relevant provisions of the Agreement are not sufficiently clear and unequivocal to require Hurley to indemnify BFS for BFS's own negligence.  "[O]ur supreme court has generally held that a contract of indemnity may require a party to indemnify an indemnitee against its own negligence if the 'intention is expressed in clear and unequivocal terms.'"  *D.R. Horton*, 422 S.C. at 152, 810 S.E.2d at 45 (quoting *Laurens Emergency Med. Specialists, PA v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 111, 584 S.E.2d 375, 379 (2003)).  Because the challenged provisions of the Agreement are not sufficiently clear and unequivocal to require Hurley to indemnify BFS for BFS's negligence, the circuit court correctly granted partial summary judgment.  *See Palmetto Trim & Renovation*, Op. No. 6099, at 24-31 (addressing contractual indemnity language in BFS's master subcontract Agreements and affirming circuit court's eight orders granting partial summary judgment to BFS's subcontractors).

3.  The circuit court correctly characterized the Agreement as a contract of adhesion.  *See Damico v. Lennar Carolinas, LLC,* 437 S.C. 596, 614, 879 S.E.2d 746, 756 (2022), *cert. denied*, 143 S. Ct. 2581 (2023) (discussing adhesion contracts and emphasizing that "*adhesive contracts are not unconscionable in and of themselves **so long as the terms are even-handed**"); *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 26-27, 644 S.E.2d 663, 669 (2007) ("[U]nder general

workmanship, and materials" refer to the windows and doors provided by BFS because Hurley had no responsibility for the design of Plaintiffs' residence or its components—including materials.  Further, although BFS provided the structural components to Hurley, the Agreement appears to require Hurley to provide a ten-year warranty on "structural applications."

principles of state contract law, an adhesion contract is a standard form contract offered on a 'take-it-or-leave-it' basis with terms that are not negotiable.").

4.  Because the Agreement's indemnity provisions are replete with terms that violate South Carolina law and public policy, these terms cannot be appropriately severed; thus, the circuit court did not err in declining to address the severability provision of the Agreement.  *See Palmetto Trim & Renovation*, Op. No. 6099, at 31-33 (rejecting BFS's invitation to sever offending contract terms when the Agreement's indemnity provisions violated South Carolina law and public policy); *Concord & Cumberland*, 424 S.C. at 656, 819 S.E.2d at 175 (declining general contractor's invitation to rewrite indemnity clauses in subcontractor agreement); *Doe v. TCSC, LLC*, 430 S.C. 602, 615, 846 S.E.2d 874, 880 (Ct. App. 2020) (noting "[c]ourts have discretion . . . to decide whether a contract is so infected with unconscionability that it must be scrapped entirely, or to sever the offending terms so the remainder may survive").

5.  The circuit court did not err in finding collateral estoppel bars the contractual indemnity claims in this case.  The indemnity clauses in the Agreement are the same clauses from the same form agreement that BFS previously litigated in *Builders FirstSource-Southeast Group, LLC v. M.I. Windows & Doors, Inc.*, No. 2018-CP-08-2547 (Berkeley, S.C., Ct. Common Pleas, Dec. 6, 2019).  *See, e.g.*, *S.C. Prop. & Cas. Ins. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 213, 403 S.E.2d 625, 627 (1991) (explaining that where the "illegality of the contract has been actually litigated and directly determined in the prior action and that issue was essential to the judgment," the application of offensive collateral estoppel is appropriate); *Judy v. Judy*, 383 S.C. 1, 7, 677 S.E.2d 213, 217 (Ct. App. 2009) (noting collateral estoppel prevents a party from relitigating an issue that was litigated and "determined by a valid and final judgment" in a previous action, regardless of whether the claims in the first and subsequent lawsuits are the same). The fact that an appeal in *MI Windows & Doors* was pending at the time of the circuit court's orders here does not change the result—the prior, unreversed judgment has preclusive effect.  As we held in *Palmetto Trim and Renovation*, the "prior findings have preclusive effect unless and until those dispositive findings are reversed."  Op. No. 6099 at 34-35 (finding the circuit court properly applied collateral estoppel despite pending appeal in *MI Windows & Doors* and explaining rationale for deeming cases on appeal to be final judgments for collateral estoppel purposes); *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 189 (1941) (finding the finality of a court's judgment is not lost because an appeal is pending unless and until the applicable finding is reversed).

6.  The circuit court properly rejected BFS's argument that the testimony of expert witness Russell T. Mease, PE established a genuine issue of material fact precluding partial summary judgment.  Although Mease did testify that the defective windows were installed improperly, it is undisputed that BFS sold Saussy Burbank the windows (which BFS only later learned were defective) for Hurley to install, provided instructions for and supervision of Hurley's installation, and inspected the installation.  Thus, we find the circuit court properly granted Hurley's motion for partial summary judgment.[4]

**AFFIRMED.**

**MCDONALD and VINSON, JJ., and BROMELL HOLMES, A.J., concur.**

---

[4] We further note BFS holds an unlimited commercial general contractor's license and is responsible—by statute—for the work of its unlicensed subcontractors. *See* S.C. Code Ann. § 40-11-270(E) (Supp. 2024) ("The licensee is fully responsible for any violations of this chapter resulting from the actions of unlicensed subcontractors performing work for the licensee.").